IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIEZER ESAU PINEDA NAJARRO      :            CIVIL ACTION

               :

    v.                   :

               :

J.L. JAMISON, ET AL.             :            NO. 26-4693

## ORDER-MEMORANDUM

**AND NOW**, this 9th day of July, 2026, upon consideration of Petitioner Eliezer Esau Pineda Najarro's Verified Petition for Writ of Habeas Corpus (Docket No. 1) and Respondents' Opposition to Petition for Writ of Habeas Corpus, **IT IS HEREBY ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus is **GRANTED**.

2. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and is instead subject to detention, if at all, pursuant to the provisions of 8 U.S.C. § 1226.

3. The Government shall immediately **RELEASE** Petitioner from custody.

4. The Government shall certify compliance with Paragraph 3 of this Order by filing, no later than 5:00 p.m. on Monday, July 13, 2026, a certification of Petitioner's custody status.

5. If the Government chooses to pursue re-detention of Petitioner pursuant to § 1226(a), it must afford him a bond hearing before a neutral immigration judge as that provision requires.

6. Petitioner's unopposed request for an order requiring the Government to return all of his personal property, including identification and documents, is **GRANTED**, and the Government shall return such personal property to Petitioner upon his release.

7. With respect to Petitioner's request for an award of his costs and reasonable attorney's fees in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (the

"EAJA"), we **DEFER** any ruling.  Petitioner may file an appropriate motion for costs and fees pursuant to the EAJA no later than August 6, 2026.

## I.      BACKGROUND

Petitioner is a native of Guatemala, who entered the United States at the Southern border in 2021 and was immediately returned to Mexico by immigration authorities without formal removal proceedings.  (Pet. ¶¶ 1, 15.)  Shortly thereafter, in August of 2021, Petitioner reentered the United States without inspection or apprehension, and he has since lived in Trenton, New Jersey with his mother.  (Id. ¶ 15.)  On July 1, 2026, Department of Homeland Security ("DHS") officials detained Petitioner at a Home Depot store while he was purchasing construction materials for work with his boss.  (Id. ¶¶ 2, 16.)  Thereafter, on July 6, 2026, the Government initiated removal proceedings against him before the Elizabeth, New Jersey Immigration Court.  (Id. ¶ 16.) Petitioner is currently detained at the Philadelphia Federal Detention Center pending removal.  (Id. ¶¶ 2, 16.)

## II.     DISCUSSION

Petitioner challenges the lawfulness of his detention on statutory grounds and as a matter of due process.  Respondents oppose the Petition.  They argue, just as they have argued in hundreds of similar cases in this District, that we should deny the Petition because (1) Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and (2) his detention does not violate due process. However, "courts in this District and across the country have repeatedly held [that] these arguments are unavailing."  Benitez Villa v. JL Jamison, Civ. A. No. 26-1926, 2026 WL 907582, at *2 (E.D. Pa. Apr. 2, 2026); see also Alekseev v. Warden, Phila. Fed. Detention Ctr., Civ. A. No. 26-462, 2026 WL 413439, at *1 (E.D. Pa. Feb. 13, 2026) (stating that by February 13, 2026 "every member of this Court ha[d] repeatedly rejected the Government's interpretation of the" Immigration and

Nationality Act ("INA") in "201 decisions, all granting 'undocumented immigrants' habeas relief"). Indeed, Respondents acknowledge that "all courts in this district (and many more elsewhere)" have rejected their position that individuals like Petitioner are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). (Opp. at 6 (citations omitted).)

We previously analyzed the statutory issue in our Memorandum Opinion in Hurtado v. Jamison, Civ. A. No. 25-6717, 2025 WL 3678432 (E.D. Pa. Dec. 18, 2025), and concluded that it is unlawful to subject noncitizens who have been residing in this country without incident to mandatory detention under § 1225(b)(2). Id. at *5-6. Notably, a panel of Second Circuit judges has since unanimously held the same, "join[ing] the overwhelming majority of federal judges across the Nation" in concluding that the "plain text" of § 1225(b)(2)(A) "does not apply to . . . noncitizens[] who are present in the United States after entering the country without inspection and admission . . . ." Barbosa da Cunha v. Freden, 175 F.4th 61, 69 (2d Cir. 2026); see also Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding, in the context of a motion for a stay pending appeal, that the Government was not likely to succeed on its argument that noncitizens already residing in the United States are subject to mandatory detention under § 1225(b)(2)(A)). "The United States Court[s] of Appeals for the Eleventh and Sixth Circuit have also rejected the Respondents' interpretation of the statutory provision at issue here." Kumar v. Warden, Pike Cnty. Corr. Facility, Civ. A. No. 26-1216, 2026 WL 1348119, at *1 (M.D. Pa. May 14, 2026) (citing Hernandez Alvarez v. Warden Fed. Det. Ctr. Miami, 175 F.4th 1258, 1262 (11th Cir. 2026), and Lopez-Campos v. Raycraft, 175 F.4th 713, 719 (6th Cir. 2026)). In Hernandez Alvarez, a panel of Eleventh Circuit judges considered "whether unadmitted aliens found in the interior of the United States are eligible for bond while they go through immigration proceedings." 175 F.4th at 1261. Respondents took the position in that case,

as it has in this case and all similar cases, "that these aliens must be detained without bond under 8 U.S.C. § 1225(b)(2)(A)." Id.  The Eleventh Circuit rejected Respondent's position, explaining that "[t]he text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing [the Illegal Immigration Reform and Immigrant Responsibility Act], yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here." Id. at 1262.  In Lopez-Campos, a panel of judges of the United States Court of Appeals for the Sixth Circuit considered whether "a noncitizen detained within the interior of the United States who never affirmatively applied for admission is subject to 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention scheme or 8 U.S.C. § 1226's permissive detention scheme." 175 F.4th at 721.  The Sixth Circuit "join[ed] the Second and Eleventh Circuits . . . in holding that § 1225(b)(2)(A) does not apply to noncitizens like Petitioners[,]" who had lived in the United States for years prior to being detained by ICE.  Id. at 722; see also id. at 734 (noting that the petitioners in that case "have lived in the United States for years or decades").

We acknowledge that divided panels of the Fifth and Eighth Circuits have found otherwise, declaring Respondents' interpretation of § 1225 to be correct.  See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502 (5th Cir. 2026); Avila v. Bondi, 170 F.4th 1128, 1134 (8th Cir. 2026).  However, we find the reasoning in Barbosa da Cunha to be more persuasive.  Indeed, the reasoning of the Second, Sixth, and Eleventh Circuits is consistent with our own analysis in Hurtado and the plethora of other comprehensive and well-reasoned opinions in this District that have rejected Respondents' arguments.  See, e.g., Kashranov v. Jamison, Civ. A. No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); Ndiaye v. Jamison, Civ. A. No. 25-6007, 2025 WL 3229307 (E.D. Pa.

Nov. 19, 2025); <u>Ibarra v. Warden of Fed. Det. Ctr. Phila.</u>, Civ. A. No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025); <u>Alekseev</u>, 2026 WL 413439; <u>Benitez Villa</u>, 2026 WL 907582.

In addition to these arguments, Respondents contend that the Supreme Court's interchangeable use of the terms "applicant for admission" and "seeking admission" in <u>Blanche v. Lau</u>, No. 25-429, 609 U.S. --, 2026 WL 1791339 (June 23, 2026), and <u>Mullin v. Al Otro Lado</u>, No. 25-5, 609 U.S. --, 2026 WL 1825741 (June 25, 2026), supports their argument that individuals like Petitioner are properly characterized as applicants seeking admission and are therefore subject to lawful mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). However, Respondents read too much into these two recent decisions, neither of which control the issue before us. <u>Lau</u> concerned a Chinese citizen who became a lawful permanent resident of the United States in 2007, was charged with a crime in 2012, and, within weeks, left the United States. 2026 WL 1791339, at *2-3. When Lau subsequently attempted to reenter the United States very shortly thereafter, a border officer did not treat Lau as having been previously admitted to this country, as is usual for a lawful permanent resident but, rather, because of Lau's criminal charge, the officer treated him as a new applicant seeking admission. <u>Id.</u> With this premise, the border officer paroled Lau into the country pending the resolution of his criminal case, which means that "he was allowed to physically enter the country without being formally admitted." <u>Id.</u> at *2. The only question before the Court on appeal was whether the border officer was authorized to consider Lau as an applicant seeking admission when he arrived at the border before the Government had presented "clear and convincing evidence" that Lau had committed the crime with which he was charged. <u>Id.</u> In that regard, the Supreme Court held that "[n]othing in the INA required the border officer to have clear and convincing evidence that Lau had committed a crime involving moral turpitude before deeming him an applicant for admission" at the border. <u>Id.</u> at *4. The Supreme Court did not

5

consider whether Lau, after being paroled into the country, could have been detained without a bond hearing under § 1225(b)(2) because that issue was not before the Court, and its determination that Lau could be classified as an applicant seeking admission when at the country's border is fully consistent with our decisions concerning the limited application of § 1225(b)(2).

The second Supreme Court case on which Respondents rely, Al Otro Lado, concerned the question of "whether an alien who seeks to enter the United States from Mexico 'arrives *in* the United States'" when he or she is still *in* Mexico." 2026 WL 1825741, at *3 (footnotes omitted). The Court held that "an alien who is standing in Mexico does not 'arriv[e] in the United States' by attempting, and failing, to set foot in this country. An alien 'arrives in the United States' only when he crosses the border." Id. at *6 (alteration in original). Respondents point out that, in the course of resolving this question, the Supreme Court stated that § 1225(a) "governs the inspection of aliens who seek admission to the United States," and they suggest that this somehow supports their argument. Id. at *3. However, this again, is consistent with our analysis of the detention issue, in which we observed that § 1225 addresses aliens who are just arriving at the country and seeking to enter, while § 1226 addresses those aliens who already present in the country. See Hurtado, 2025 WL 3678432, at *4. The Supreme Court did not consider or decide whether an alien who is physically present in the United States is subject to the mandatory detention under 8 U.S.C. § 1225(b)(2)(A). We conclude, accordingly, that neither of these very recent Supreme Court decisions supports the Government's position that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A).

**III.    CONCLUSION**

Accordingly, for the reasons set forth above, in our <u>Hurtado</u> decision, and in the multitude of other consistent opinions in this District, we grant the instant Petition, concluding that Respondents do not have authority to detain Petitioner without a bond hearing under § 1225(b)(2).

BY THE COURT:

 /s/ John R. Padova, J.
John R. Padova, J.